KAREEM MILLHOUSE,
          PLAINTIFF

v.

Rhonda Jones, Pamela Kenny,
R. Cimorussa, Mitchell Dyer,
Carrie Cunnigan, J. Ray Ormond,
Baron, N. Keith, J. Gaddis, R. Clark,
Pamela Poston, Helen Anderson,
John Does 1-10, Federal Bureau of
Prisons, United States of America,
W. Foster
          DEFENDANT(s)

* JURY TRIAL DEMAND
* Filed under imminent danger exception.

Civil Action No 6:18-cv-125-DLB

Eastern District of Kentucky
**FILED**
APR 18 2018
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

(I) **Jurisdiction:**

Bivins v Six Unknown Agents of Federal Bureau of Narcotics, and, United States Federal Tort Claim Act.

(II) **Parties:**

(A) PLAINTIFF: Kareem Millhouse, #59904-066
    USP-McR
    P.O. Box 3000
    Pine Knot, KY 42635

(B) DEFENDANT(S)

(1) Rhonda Jones, Health Service Administrator
(2) Pamela Kenny, Mid Level Provider
(3) R. Cimorussa, Assistant Health Service Administrator
(4) Mitchell Dyer, Physician Assistant Certified
(5) Carrie Cunnigan, Medical Doctor
(6) J. Ray Ormond, Warden
(7) Baron, Associate Warden
(8) N. Keith, Corrections Counselor
(9) J. Gaddis, Case Manager
(10) R. Clark, Unit Manager
(11) Pamela Poston, Unit Manager
(12) Helen Anderson, Unit Manager
(13) John Does 1-10
(14) Federal Bureau of Prisons
(15) United States of America
(16) W. Foster, Corrections Counselor

"All Defendants are employed at USP-McCreary"

(III) **Claims:**

"See next page."

(1)

(1) Rhonda Jones,

I spoke to Jones on numerous occasions explaining that I had back surgery 3/8/17 and was transferred from previous institution after one follow-up doctor appointment by operating doctor on April 24, 2017 and that the follow-up appointment was April 17, 2017. In addition I explained that the operating doctor scheduled another follow-up appoint for July 2017.

I also told her that on April 19, 2017 the Clinical Director/medical doctor at that previous institution came to my cell on April 19, 2017 telling me to sign a medical refusal for that follow-up scheduled for July, 2017 and that I refused to sign. His purpose for proposing that I sign was intended only to transfer me because of pending civil actions. I told Jones I refused to sign because the follow-up appointment was necessary because I suffered post-surgery complications and the doctor ~~som~~ at my previous institution said "more than likely I will not have that follow-up appointment."

I told ~~the~~ Jones that I still do not have feeling in parts of left foot and left leg and that I still have perpetual pain shooting down lower body but more in left leg, burning, numbness, and ~~feel~~ sensations as if being poked by millions of needles and at times sensations of being deeply poked by needles, and excruciating back pain.

I also told her that I aggravated pre-existing injuries by falling from upper bunk and that the prescribed Ibuprofen did not relieve back pain and especially nerve pain, nor did Gabapentin relieve my back pain. I did not receive any ~~surgu~~ therapy post-surgery nor the recommended "Hydrocodone/Lyrica" medications.

Jones stated that I'm okay, she had the same back surgery and that she is a "Nurse."

I also told Jones that I have carpel tunnel in both hands, pain, weakness and numbness, burning in those hands and arms and left knee pain that both of these conditions was diagnosed in "BoP" in 2016.

(2) Pamela Kenny,

On May 5, 2017 Kenny discontinued central office approved medication included "nerve pain" medication "Gabapentin" causing severe pain and suffering, although a non-formulary request was approved by central office. In addition she discontinued "Nasal Spray" causing extreme discomfort.

(3) R. Cimorossa

I explained the exact same things to her as I did Rhonda Jones and Cimorossa reacted the same way!

(2)

(4). Mitchell Dyer

I explained the exact same things to Dyer as I did to Rhonda Jones. However, in July, 2017 Dyer increased the dosage of Gabapentin although that dosage was ineffective for nerve pain because it were off quickly. He refused to prescribed me, adequate and effective for back pain such as recommended medications that is the normal practice in society. He simply stated that he will not do so.

In Sept. 2017 my Gabapentin was discontinued and he refused to represcribe that medication but reiterate that he will prescribe institutional medications that I was "previously" prescribed and proved ineffective.

On April 4, 2018 Dyer said that he would recommend non-formulary medications but Rhonda Jones told him not to and that if he did so they'll not be approved. I told him to do so anyway because I've been suffering perpetual pain "nerve" pain without any intervention and I need medication for "back pain." I had a fusion o L-5 (spine).!!

Dyer did not prescribe nor recommend any intervention, but in July, 2017 a Neuro-surgeon Consult was denied with remarks that USP-McCleary will manage my pain "Locally".

In addition a neuro-surgeon consult was denied in May, 2017. Dyer also knew that several falls from upper bunk aggravated my pre-existing conditions but no medical staff ordered a CT scan nor MRI, although I constantly complained of pain

(5) Carrie Cunnigan

I explained to her the exact same thing as I told Rhonda Jones and she said I will not get any non-formulary pain medications.

(3)

(6). J. RAY ORMOND

I spoke to Ormond explaining that I had a lower bunk Authorization consistently since "2011" and a current one when I arrived here that I fell from upper bunk May, Aug, and October 2017 due to the fact that I have numbness in left leg and spinal injury which required surgery but continue to be assigned upper bunks. that unit officers told me to speak to unit team about these issues. However, I arrived 5/1/17 and finally on 5/31/17 I was assigned Lower bunk. Meanwhile, on 7/31/17 I was forced to move from that lower bunk status to upper bunk and fell Aug. 8, 2017. Again on Sept. 29, 2017 I again was was assigned upper bunk. I also told Ormond I did not receive adequate medical treatment and that Dr. Perkins Renewed my lower bunk pass 5/9/17 which Expired "5/10/27." But unbeknownst to me I surreptitiously was reissued another lower bunk pass sometime after 5/9/17 that Expired 7/10/17 Meanwhile, the physical limitations or restrictions which included everything but "walking" Expired 7/25/17. Again unbeknownst to me another pass was issued Aug. 15, 2017 and Expired 2/15/18. which was a cover-up for the 8/8/17 fall because Ormond forced me to move from my assigned cell so that he could placed (5) Pair of work boots in that cell.

Finally in November, 2017 I was assigned a Lower bunk!

(7) Baron

I explained everything I stated to Rhonda Jones and J. Ray Ormond to Baron, and including that everytime I go to sick call they state "they cannot" do anything for me and order "Ibuprofen" from "Commissary" although I was "Encumbered" financially and could not "spend" any money. Aside from having extensive history that "Ibuprofen" does not (4) work. Nothing was done!

(8) N. Keith

I told Keith that I had back surgery 3/8/17 and require a lower bunk and that I was assigned a upper bunk 5/1/17 but had a current lower bunk pass and he told me to show him my pass. I told him that it's in "SENTRY". But once I got a physical pass 5/9/17 I showed Keith, Ormond, Baron etc... But I was reassigned the lower bunk in a cell that I occupied although it was two empty cells.

Keith finally reassigned me a lower bunk 5/31/17!

(9). J. Gaddis,

I told Gaddis on numerous occasions that I had lower bunk authorization but he failed to reassign me to lower bunk although I was assigned upper bunks. I told him unit officers said that is a issue I must take up with unit team.

IN November, 2017 Gaddis finally told me after I was finally assigned a lower bunk if I have any more issues come directly to him.

(10). R. Clark

I told unit manager Clark that I was assigned a upper bunk 5/1/17 with lower bunk Authorization and he said "he is acting" unit manager and to speak with unit officers. I told him unit officers said speak to him. He said he doesn't assign bunks!

(11) Pamela Poston

Poston came to my cell 109 7/31/17 and said that I had to move per warden. I showed her the lower bunk pass from 5/9/17 and she stated I have to move!

She moved me to 108 upper bunk, although I told her I had back surgery 3/8/17 and have post-surgery complications and require bottom bunk. She still moved me in 108 with a 24 yr old.

(12) Helen Anderson,

I told her that Foster assigned me a top bunk and told me to get in it or he will write(5) me a incident report for being out

bounds and that my 44yr old cellmate is assigned to the lower bunk. She said she would look into it!
Meanwhile, approx. Oct. 31, 2017 I fell from upper bunk descending latter. I told her beforehand that I had back surgery and require special needs.

(13) John Does 1-10,
Unknown defendants that will be identified through limit discovery such as unit officers and medical personnel that rescind rescinded lower bunks passes and re-issued them. Each John Doe is relevant to said claims in this complaint.

(14) Federal Bureau of Prisons
Federal Bureau of Prisons employ said defendants and as an agency is responsible for the employees conduct while acting in their official compacity.

(15) United States of America
Some defendants may be immune from Bivens but the United States waived its immunity for certain claims and is liable for its employees negligent conduct.

(16) W. Foster,
Although aware of lower bunk authorization assigned me an upper bunk in cell 108 from cell 216 lower.
In October, 2017 assigned me a cellmate and told me to get in upper bunk or he will issue incident report for being out of bounds.

(6)

In addition I told all medical staff and custody staff alike that when I transferred here my back brace did not arrive and that operating Doctor told me on 4/17/17 to continue to wear that brace. Rhonda Jones told me on 5/9/17 that she was aware of the operating Doctors recommendations and that she previously had a conversation with the medical Doctor/Clinical Director in previous institution. I also explained that I did not have my soft shoes and was told to order from Commissary although I was financially encumbered and unable to spend any money.
The soft shoes eased the pressure on my lower bunk. No recommendations nor approved special needs requirements was followed.
I also submitted numerous administrative remedies and tort claims.

### V. Relief

(1) $10,000,000.00 in Compensatory Damages from Each Defendant the law allows,

(2) $10,000,000.00 in Punitive Damages from Each Defendant the law allows, from 8th Amend Violations.

(3) $10,000,000.00 from United States for its employee's negligent conduct.

(4) Injunctive Relief to be Assigned a "medical" institution such as "USP-Terre Haute"

(5) Whatever or other relief this court deem just.

### VI. Certification

I, Kareem Milhouse, certify the foregoing is true and correct to the best of my ability.   *Kareem Milhouse*

(7)

As a direct result of the breach of duty in accord with 18 USC § 4042(2) I suffered inadequate and ineffective treatment as well as being negligently assigned upper bunks when it is staff's duty to screen cellmates for compatibility before assigning bed assignments. Staff negligently failed to screen me before bed assignments causing me to suffer and aggravate pre-existing conditions. In addition defendants were deliberately indifferent to my medical needs and special needs causing additional injuries that I suffered which were not further diagnosed and the extent of those injuries unknown due to the fact that defendants (medical) failed to order other tests aside from X-rays therefore, I do not know the extent of left shoulder, left elbow, left knee, lower back and head injuries that I still suffer pain (increased) separate from pre-existing conditions.

(7-A)