UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KAREEM MILLHOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:18-CV-125-DLB-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| RHONDA JONES, *et al.*, | ) | & ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties have filed cross-motions for summary judgment in this *pro se* prisoner civil rights action. D.E. 89; D.E. 104. For purposes of these motions, the Court accepts as true the following factual allegations, as described in Plaintiff Kareem Millhouse's filings and his August 13, 2019 deposition (D.E. 104-3), within the parameters described by Federal Rule of Civil Procedure 56(c).

Millhouse has suffered back problems since childhood. D.E. 104-1 at 12. Prior to his incarceration, he had been shot thirteen times. D.E. 104-3 at 17. Since 2006, he has suffered from back pain, leg pain, and burning and neuropathy in his foot. *Id*. at 6, 12. In March 2017, while incarcerated at USP Lewisburg in Pennsylvania, he received back surgery. *Id*. at 7; D.E. 89-1 at 5.

On May 3, 2017, Millhouse was transferred from USP Lewisburg to USP McCreary in Kentucky. D.E. 89-1 at 3. Millhouse brought with him a "pass" from USP Lewisburg that indicated he needed to sleep on a lower bunk on account of his medical conditions. *Id*. However, on the night of his arrival, Millhouse was assigned an upper bunk. *Id*. That very

night, he slipped while climbing onto his bunk. *Id*. His head hit "the side of the wall;" he developed "a little knot" on the back of his head and pain in his left elbow and left knee. *Id*.; D.E. 104-3 at 39-41. The knot did not require treatment and went away on its own. D.E. 104-1 at 2; D.E. 104-3 at 41.

On May 9, 2017, USP McCreary issued its own lower bunk pass to Millhouse. D.E. 89-1 at 3. Oddly, it carried an expiration date of May 10, 2027. *Id*. Lower bunk passes are generally reviewed every 180 days. *Id*.; D.E. 104-7. Apparently to correct this error, a new pass was issued on May 31, 2017, which bore an expiration date of July 10, 2017. D.E. 89-1 at 3; D.E. 104-3 at 30.

Millhouse was moved to a lower bunk around June 29 to July 2. D.E. 89-1 at 3; D.E. 104-3 at 30. It thus appears he spent as many as 60 days using an upper bunk upon his arrival at USP McCreary.

One day around July 31 to August 3, 2017, prison staff moved Millhouse back to an upper bunk. D.E. 104-1 at 3; D.E. 104-3 at 31. Millhouse says he showed his bunk pass to staff, but they did not honor it. D.E. 104-3 at 31. Instead, they assigned him a cell with another prisoner who also had a bottom bunk pass. *Id*. at 52-53. This other prisoner "was shot multiple times" and had a "colostomy bag or something." *Id*. at 52.

Millhouse says he fell from the top bunk again on August 8, 2017, hurting his left shoulder. D.E. 89-1 at 3. An X-ray revealed arthritis in that shoulder. D.E. 104-3 at 31, 43. After the fall, Millhouse was moved to a lower bunk in a different cell. *Id*.

Millhouse received a new lower bunk pass on August 15, 2017, with an expiration date of February 15, 2018. D.E. 89-1 at 3; D.E. 104-1 at 2.

2

In September, Millhouse was assigned a new cell with no cellmate, so he continued to use a lower bunk. D.E. 104-3 at 32, 52. In October 2017, a cellmate was assigned to that cell. The cellmate had been shot and had one lung. *Id*. at 52. Millhouse began using an upper bunk again. *Id*. at 32-33.

On October 30, 2017, Millhouse fell a third time, "hurting his left knee and elbow." D.E. 89-1 at 3. He said his left side was already hurting before the fall, so he "couldn't rightly say" that the pain resulted from the fall. D.E. 104-3 at 43. Millhouse said that Pamela Poston, the supervisor, blamed Millhouse's cellmate for the fall because she had told the cellmate to give Millhouse the bottom bunk. *Id*. at 45, 48. Millhouse was given a lower bunk again sometime in November 2017 and kept a lower bunk the remainder of his time at USP McCreary. *Id*. at 54-56. In August 2018, Millhouse returned to USP Lewisburg. *Id*. at 8.

In addition to the issues with his lower-bunk pass, Millhouse argues that USP McCreary did not provide adequate medical care in the wake of his March 2017 back surgery. D.E. 89-1 at 5.

After exhausting his administrative remedies, Millhouse filed the complaint in this case on May 21, 2018. D.E. 6; D.E. 104-1 at 2. Upon initial screening, Judge Bunning noted that Millhouse is "an abusive litigator" who is "barred from proceeding *in forma pauperis*" under the three-strikes rule of 28 U.S.C. § 1915(g). D.E. 21 at 9. Yet Millhouse was allowed to proceed *in forma pauperis* in this case due to "exigent circumstances." *Id*. at 10. In May 2019, Millhouse supplemented his Complaint to correct two dates. D.E. 74. In July 2019, Millhouse again supplemented his Complaint to identify John Doe #1 as Officer Jerry Garland. D.E. 86.

Millhouse brings two claims: an Eighth Amendment claim of deliberate indifference under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and a claim for

3

medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. He names as defendants Rhonda Jones, Pamela Kenny and Mitchell Dyer from the USP McCreary medical staff. He also names as defendants Warden J. Ray Ormond, Corrections Counselors N. Keith and W. Foster, Case Manager J. Gaddis, Unit Managers Pamela Poston and Helen Anderson, Corrections Officers Jerry Garland and Jonathan Hutson, and other unidentified staff. The United States is also a defendant.

On August 20, 2019, the Court received Millhouse's motion for summary judgment, accompanied by a brief in support and a statement of material facts. D.E. 89. Defendants responded on September 30, 2019, by filing their own motion for summary judgment, accompanied by various exhibits. D.E. 104. No response briefs were filed by the January 3, 2020 deadline, and no motions to extend that deadline were filed. *See* D.E. 113. Millhouse filed a motion, dated January 2, 2020, to obtain additional discovery. D.E. 114.

## II. Legal Standards—Summary Judgment

A motion under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law, the party is entitled to summary judgment. *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need its own evidence to show it is entitled to judgment as a matter of law, but need only point to the absence of evidence to support the other party's claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions,

4

and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all the evidence in the light most favorable to the responding party and draws all reasonable factual inferences in the responding party's favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, that party's evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

On cross-motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991); *see also Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must review the evidence submitted in support of each cross-motion. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 594 (6th Cir. 2001). And the Court has done so here.

The parties agree that for purposes of these motions there exists no genuine dispute as to any material fact.[1] D.E. 89-1 at 1; D.E. 104-1 at 1.  Specifically, Defendants state that, although the relevant facts are "not entirely undisputed," Defendants rely on "Plaintiff's version of the events" in their motion for summary judgment.  D.E. 104-1 at 1.  The Court must also make its own determination as to whether there is any disputed issue of material fact.  *Fair Hous. Council of Riverside Cty., Inc.*, 249 F.3d at 1136; *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).  Given that Defendants rely on Plaintiff's version of events, the Court finds no disputed issue of material fact for purposes of the motions at hand.  Defendants' reliance on Plaintiff's versions of the facts also makes it unnecessary to address each motion separately.

### III. FTCA Claim for Medical Negligence

The FTCA applies to federal inmates' claims alleging personal injuries sustained—while incarcerated—as a result of the negligence of government employees.  *United States v. Muniz*, 374 U.S. 150 (1963).  Liability under the FTCA is generally determined by the law of the state where the alleged injury occurred.  *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995).  An FTCA claim may be asserted only against the United States.  28 U.S.C. § 2674; *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

Under Kentucky negligence law, including medical negligence, the Plaintiff must establish the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence.  *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687-88 (Ky. 2003), *as amended* (Aug. 27, 2003); *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1997).

---

[1] A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010); *accord Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007). "[T]he plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). The expert's opinion must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky. Ct. App. 2001).

To be clear, meeting this standard requires that the expert establish the applicable standard of care. "To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, *in the form of expert testimony*, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant . . . ." *Sandler v. United States*, No. 6:11-CV-206-GFVT, 2013 WL 5468493, at *6 (E.D. Ky. Sept. 30, 2013) (quoting *Heavrin v. Jones*, No. 02-CA-16-MR, 2003 WL 21673958, at * 1 (Ky. Ct. App. July 18, 2003)). "It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case." *Id*. (quoting *Hernandez v. United States,* No. 5:08-CV-195-KSF, 2009 WL 1586809, at *6 (E.D. Ky. June 5, 2009)).[2]

---

[2] *See also Partin v. Tilford*, No. 5:13-CV-193-CRS, 2016 WL 3212248, at *2 (W.D. Ky. June 7, 2016) (granting summary judgment when plaintiff failed to establish "what a proper [treatment] entails"); *Smith v. Rees*, No. 5:07-CV-180-TBR, 2011 WL 3236635, at *3 (W.D. Ky. July 28, 2011) (requiring expert testimony to establish the standard of care); *Beard v. United States*, No. 5:08-CV-105-KSF, 2009 WL 305893, at *7-9 (E.D. Ky. Feb. 6, 2009) (granting summary judgment when plaintiff offered no expert proof establishing the standard of care); *Hitch v. St. Elizabeth Med. Ctr., Inc.*, No. 2014-CA-1361-MR, 2016 WL 1557734, at *2 (Ky. Ct. App. Apr. 15, 2016) (granting summary judgment when the expert "made no statement to indicate what the standard of care is"); *Tackett v.*

Exceptions to this expert-testimony rule exist, including "*res ipsa loquitur* cases" and cases where the physician admitted negligence. *Blankenship*, 302 S.W.3d at 670. But Millhouse has not argued any such exception fits here. *See also Andrew*, 203 S.W.3d at 171.

Millhouse has presented no expert testimony, as required by Kentucky law, to prove a medical negligence claim. Thus, Defendants are entitled to judgment as a matter of law on this claim.

Defendants additionally argue, in the alternative, that Millhouse has not requested compensatory damages, which is the only type of relief provided by the FTCA. D.E. 104-1 at 13.[3] Defendants also argue that Millhouse suffered no actual injury from his falls. *Id*. at 11-13. The Court need not delve into these arguments because Millhouse's failure to support his claim with an expert medical opinion is sufficient to warrant judgment as a matter of law.

## IV. *Bivens* Claim

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F.3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511

---

*Appalachian Reg'l Healthcare, Inc.*, No. 2007-CA-720-MR, 2008 WL 2779528, at *2-4 (Ky. Ct. App. July 18, 2008) (granting summary judgment when the plaintiff's expert "failed to produce evidence as to the medical standard of care at issue").

[3] Millhouse stated in his deposition that he was not requesting any monetary damages. D.E. 104-3 at 67. All he wants is some better medical treatment. *Id.* He said he asked for $40 million in damages in his Complaint "just because why not? . . . Maybe they would realize that I'm not playing." *Id*.

8

U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

Regarding the medical Defendants—Jones, Dyer, and Kenny—as previously discussed, Millhouse has not established they were medically negligent. And "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It is well-established that "mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Robbins v. Black*, 351 F. App'x 58, 62 (6th Cir. 2009) (quoting *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir.2003)).

"Negligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference." *Jones v. Muskegon Cty.*, 625 F.3d 935, 945 (6th Cir. 2010) (quoting *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *5 (6th Cir. Feb. 2, 2009)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error."); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). If Millhouse cannot even establish negligence (for the reasons discussed above), he cannot establish deliberate indifference, which is a higher standard of culpability.

Nor does Millhouse present any evidence to buttress his conclusory allegations that the medical Defendants consciously disregarded a substantial risk of harm during their encounters

9

with him. The record shows Millhouse was seen repeatedly by prison medical staff. His argument boils down to a disagreement with the medical Defendants' treatment decisions. *See* D.E. 89-1 at 5. "A difference of opinion between a prisoner and medical staff regarding diagnosis and prescribed treatment does not support an Eighth Amendment claim." *Brittenham v. Dinsa*, No. 2:09-CV-14025, 2010 WL 727748, at *2 (E.D. Mich. Feb. 23, 2010); *see also Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006) (dismissing a deliberate indifference claim when the plaintiff's "factual allegations established nothing more than a mere difference of opinion with the doctors' diagnoses and prescribed treatment"); *Lara-Portela v. Stine*, No. 6:07-CV-14-KKC, 2008 WL 45398, at *8 (E.D. Ky. Jan. 2, 2008) (observing that "a difference of opinion regarding the plaintiff's diagnosis and treatment does not state a constitutional claim")

Because Millhouse's claim does not rise to the level of a constitutional violation, the medical Defendants are entitled to judgment as a matter of law.

### B. Deliberate Indifference to Inmate Safety

What remains is Millhouse's deliberate-indifference claim against the other prison employees, whom he argues failed to honor his bottom-bunk pass, which led to him falling three times. "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Again, a deliberate indifference claim contains both an objective and a subjective component. To show that the alleged mistreatment was objectively "sufficiently serious," the

plaintiff must show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

The subjective component requires a showing that prison officials acted with "deliberate indifference" to inmate health or safety:

> An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." [*Farmer*, 511 U.S. at 837.] The Supreme Court has held that:
>
>> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.
>
> [*Id.* at 842.] However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it.

*Bishop*, 636 F.3d at 766-67. Deliberate indifference is equivalent to criminal recklessness. *Farmer*, 511 U.S. at 839-40. The plaintiff "must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

The Court assumes for purposes of these motions that Millhouse at all relevant times possessed a lower-bunk pass. However, "A lower-bunk permit does not supplant [the] framework for Eighth Amendment claims." *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). "[M]edical personnel issue lower-bunk directives for reasons that do not imply the existence of a 'serious' health problem." *Id.* The existence of a lower-bunk pass does not "convey to any conscientious prison employee the existence of a serious medical condition." *Id.* Failure to honor a bottom bunk pass is not always deliberate indifference. *See, e.g.*, *Babcock v. Roe*, 173 F.3d 428 (6th Cir. 1999) (table) (affirming dismissal of a claim that

11

prison officials failed to honor a lower-bunk pass).  The issue is not whether Defendants "made the decision to assign Plaintiff an upper bunk, but whether Defendants were deliberately indifferent to a serious medical need Plaintiff was experiencing."  *McMurry v. Caruso*, No. 1:10-CV-1206, 2011 WL 7396314, at *13 (W.D. Mich. Dec. 29, 2011), *report and recommendation adopted*, 2012 WL 560860 (W.D. Mich. Feb. 17, 2012).

The most Millhouse has shown is that he suffered three accidental falls that could have been avoided if he had been using a bottom bunk.  "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."  *Robbins v. Black*, 351 F. App'x 58, 62 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

It is regrettable that prison staff did not always honor Millhouse's lower bunk pass.  In some circumstances, refusal to honor a lower bunk pass could amount to deliberate indifference.  *See McMurry*, 2011 WL 7396314, at *13.  This, however, is not such a case.  Millhouse did have difficulty climbing into an upper bunk due to his physical limitations.  Yet he spent many nights in a top bunk without incident.  This case is not like *McMurry*, where the claimant could not physically climb into a top bunk because he was incapable of bending his right knee following reconstructive surgery.  *McMurry*, 2011 WL 7396314, at *1-2.  Based on the dates Millhouse provided in his deposition, of the 455 days he spent at USP McCreary, he spent over 100 nights—approximately a quarter of his stay—using an upper bunk.  He alleges he fell three times.  That Millhouse spent so many nights on the top bunk is relevant to the issue of whether Defendants unnecessarily and wantonly inflicted pain.  In a somewhat similar case, a court denied a deliberate indifference claim, noting, that the plaintiff "slept in his top bunk from July 20, 1994 through September 7, 1994 [49 nights] without incident before he claims to have been

injured by falling." *Bout v. Bolden*, 22 F. Supp. 2d 646, 650 (E.D. Mich. 1998), *aff'd*, 225 F.3d 658 (6th Cir. 2000).

Further, Millhouse's injuries from his three falls, if any, were minimal. The court in *Gore*, for example, found the plaintiff's lack of injury relevant to his deliberate indifference claim related to a bottom-bunk pass. *Gore v. Core Civic, Inc.*, No. 3:17-CV-1082, 2018 WL 5255283, at *8 (M.D. Tenn. Oct. 22, 2018), *report and recommendation adopted*, 2018 WL 5833070 (M.D. Tenn. Nov. 6, 2018). Again, Millhouse must show that officials subjectively possessed knowledge—before assigning him a top bunk—that doing so would create a risk of serious injury. *Faulkner v. Monroe Cnty Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013) (upholding dismissal of a deliberate indifference claim related to a fall from a top bunk).

Accordingly, the record does not reveal anything that would have put prison staff on notice that Millhouse was facing a *substantial* risk of serious harm. *Farmer*, 511 U.S. at 834. He suffered three falls during over a hundred nights spent on the top bunk, resulting in minimal injuries. Prison staff thus did not know of and yet disregard an *excessive* risk to Millhouse's safety. *Id*. at 837. The risk to Millhouse was not "obvious." *Id*. at 842. It was not obvious that Millhouse faced a serious threat by climbing into a top bunk each night because he did it successfully many times. And, thankfully, the times he slipped did not generate serious injuries. Although prison officials knew or should have known that Millhouse possessed a lower bunk pass, that is not tantamount to knowing that assigning a top bunk created an excessive safety risk. The facts in this case, interpreted in the light most favorable to Millhouse, establish neither the objective nor subjective component of a deliberate-indifference-to-safety claim.

In short, Millhouse has failed to point to evidence in the record that, interpreted in the light most favorable to him, would establish deliberate indifference (concerning his medical

13

treatment or personal safety) or raise a disputed issue of material fact. Defendants are entitled to judgment as a matter of law.

## V. Motion for Discovery

Millhouse also asks the Court to compel production of certain records. D.E. 114. As Millhouse recognizes, this request—in the summary-judgment context—is governed by Federal Rule of Civil Procedure 56(d). That Rule provides:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

In ruling on Defendants' motion for summary judgment, the Court has accepted as true the facts (though not necessarily the opinions and legal conclusions) stated by Millhouse in his deposition, as well as all facts stated in Millhouse's filings that are supported by evidence in the record.

Millhouse argues that he had insufficient time to conduct discovery before Defendants moved for summary judgment. D.E. 114 at 1. The parties were given almost five months to conduct discovery, and neither party requested an extension. *See* D.E. 64. Also, Millhouse filed his own motion for summary judgment over a month before Defendants' motion. In filing his motion for summary judgment, Millhouse argued there is no genuine dispute as to any material fact. D.E. 89-1 at 1. His litigation behavior indicates that additional discovery is not critical to his claim. His motion to compel production must therefore be denied.

## VI. Conclusion

The undersigned **RECOMMENDS** that Defendants' motion for summary judgment (D.E. 104) be **GRANTED** and Plaintiff's motion for summary judgment (D.E. 89) be **DENIED.**

Additionally, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for discovery (D.E. 114) is **DENIED.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 30th day of January, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge